IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 2, 2005

## WALDO WIGGINS, JR. v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Tipton County**
**No. 3945     Joseph H. Walker, III, Judge**

—————

**No. W2004-02397-CCA-R3-CO  - Filed November 10, 2005**

—————

The petitioner, Waldo Wiggins, Jr., was convicted in the Tipton County Circuit Court of first degree murder.  Subsequently, the petitioner filed a petition for post-conviction relief and a petition for a writ of error coram nobis.  The trial court denied both petitions, and the petitioner now appeals. Upon our review of the record and the parties' briefs, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court are Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which DAVID H. WELLES and J.C. MCLIN, JJ., joined.

Glenwood P. Roane, Sr., and Brett B. Stein, Memphis, Tennessee, for the appellant, Waldo Wiggins, Jr.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; Elizabeth T. Rice, District Attorney General; and James Walter Freeland, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

### I.  Factual Background

This case arose as a result of the shooting of the victim, Tatrina Terry, on April 14, 1999. The proof at trial revealed that the appellant was one of the last people to have a telephone conversation with the victim on the night prior to her death.  During their conversation, the victim told the petitioner that she was coming to see him, but she never arrived.  The next morning, the victim was found shot to death.  At the time of her death, the victim was pregnant with a child the petitioner believed to be his.  However, post-mortem DNA testing revealed that the petitioner was not the father of the victim's child.

Police found the murder weapon, along with several other weapons, in a closet in the petitioner's home. During a statement to police, the petitioner repeatedly denied any involvement in the murder of the victim. Testimony at trial revealed that the petitioner showed no surprise or remorse upon the discovery of the victim's body. The petitioner did not testify at trial. He was found guilty of the first degree murder of the victim, and his conviction was affirmed by this court on direct appeal. State v. Waldo Wiggins, Jr., No. W2000-02766-CCA-R3-CD, 2001 WL 1690193, at **1-4 (Tenn. Crim. App. at Jackson, Dec. 14, 2001). Our supreme court denied the petitioner's application for permission to appeal on May 28, 2002.

On May 8, 2002, prior to the denial of his application for permission to appeal to the supreme court, the petitioner, acting pro se, filed a petition for post-conviction relief, alleging numerous instances of ineffective assistance of counsel. The petitioner's complaints included counsel's failure to investigate the violation of his Miranda rights; failure to move to suppress the gun found in his house; failure to challenge the biological evidence introduced at the juvenile transfer hearing and at trial; failure to independently test the biological evidence; failure to object to circumstantial evidence; failure to object to how blood was collected from the murder weapon and to the chain of evidence of the blood collected; and failure to call three witnesses who heard someone else confess to killing the victim.

The trial court appointed counsel to assist the petitioner, and counsel asserted that no amended petition for post-conviction relief would be filed. The State, responding to the post-conviction petition, asserted, "The Petition herein, upon which the attorney for the Petitioner has indicated he intends to rely without filing an amendment thereto, is too convoluted, incoherent, and confusing to allow specific response. However, the State denies that counsel was in anywise incompetent or ineffective in assisting Petitioner."

Thereafter, the petitioner's post-conviction counsel was permitted to withdraw and new counsel was appointed to assist the petitioner. New counsel filed a petition for a writ of error coram nobis. In that petition, the petitioner acknowledged that his petition for a writ of error coram nobis had been filed outside of the statute of limitations; however, he argued that due process required tolling of the statute. The petitioner argued that newly discovered evidence entitled him to a new trial. Specifically, the petitioner alleged that the entire sample of blood from the murder weapon was consumed by the Tennessee Bureau of Investigation (TBI) during testing, and the petitioner was unable to conduct independent testing. Additionally, the petitioner asserted that the TBI's testing of the gun was flawed, citing the report of the testing which reflected the wrong laboratory exhibit number for the murder weapon. Further, the petitioner complained that there was a "serious chain of custody issue" regarding the weapons, including the murder weapon, which were found at the petitioner's residence.

The petitioner also complained that "[a] gunpowder residue test was taken of the petitioner, but said test was never sent for analysis." The petitioner maintained that his IQ of 68 "made it easier for the Tipton County Sheriff Officers to build a false case against [him]." The petitioner contended that police never tried to locate the father of the victim's child, and he asserted that person might be

the killer. Finally, the petitioner complained that three witnesses, Kathy Tipton, Pamela Tipton, and Crystal Shanta Weathers, heard someone else confess to killing the victim, but they were not called as witnesses at trial.

Subsequently, the petitioner filed an "Amended and Supplemental Petition for Post Conviction Relief/Petition for Error Coram Nobis." In his amended petition, the petitioner alleged that counsel was ineffective in failing to file a motion to suppress his statements. The petitioner asserted that because of his low IQ he did not have the mental capacity to waive his Miranda rights. The petitioner also alleged that counsel was ineffective for not raising the issue of the petitioner's mental deficiency to dispute the mens rea of the offense or to show that the petitioner might be guilty of a lesser offense.

The petitioner testified at a hearing on the petition that he was seventeen years old when the victim was killed. At that time, he was in the eleventh grade, and he had been taking special education classes for "slow learners" since middle school. The petitioner stated that he spoke to police for the first time the day after the victim was killed. His mother was with him during the interview. The petitioner did not recall police reading him his Miranda rights prior to the interview. During the interview, police questioned the petitioner regarding the victim's telephone call to him the night she was killed. The petitioner asserted that during the interview he denied killing the victim, and he told police that he had no reason to kill her. The petitioner said that he had talked on the telephone with several girls on the night of the victim's murder. He stated that he did not see the victim at his house on the night she was killed.

The petitioner said that weeks after the first interview, police asked him to come to a hospital to submit DNA for testing. The petitioner and his mother went to the hospital, and a sample of the petitioner's DNA was taken. Months later, police conducted another interview with the petitioner. The petitioner stated that he was not read his Miranda rights. During the interview, police confronted the petitioner, alleging that they had discovered the murder weapon at his residence. The petitioner told police that they could not have found the murder weapon at his home. The petitioner was arrested the next day.

Donna Lee Wiggins, the petitioner's mother, testified at the hearing that the victim called the petitioner the night she was killed. The victim told the petitioner that she was coming to his house to visit; however, she never arrived. The next day, police asked to speak with the petitioner regarding the victim. Mrs. Wiggins was present during this interview. Mrs. Wiggins did not recall the petitioner ever being advised of his Miranda rights. During the interview, the petitioner denied involvement in the victim's murder.

Months later, after the murder weapon had been found at the petitioner's house, police again interviewed the petitioner. Mrs. Wiggins was present for that interview as well. According to Mrs. Wiggins, the petitioner was never advised of his Miranda rights. During the interview, police told the petitioner that they had found the murder weapon, proving that he killed the victim. The

petitioner again denied involvement in the victim's murder. Mrs. Wiggins stated that the petitioner went home after the second interview, but he was arrested about a month later.

Kathy Tipton testified that she was the petitioner's cousin. In 1999, she became aware that the appellant had been charged with murder. That same year, Tipton was in "Mr. Frank's club" with her sister, Pamela.[1] Lamont Fayne, a man Tipton had "met . . . from off the streets" was also at the club. Tipton testified that Fayne was talking about the victim so loudly that everyone in the club could hear him. Tipton said that Fayne admitted that he had killed the victim. Neither Tipton nor her sister reported Fayne's statement to police. She explained that she did not tell anyone because she did not believe Fayne.

Crystal Shanta Weathers testified that she was not related to the petitioner, but she did attend church with him. Weathers maintained that at some point in 1999, she overheard a conversation between "Smoke G" and some other men. Weathers knew "Smoke G" from "around the way," but she did not know his real name.[2] Weathers recalled, "Him and some other guys was beefing. They was into it with each other. And he said that he – they was going to mess around, come up dead like he killed that [victim]." Weathers said that "Smoke G" did not appear to be threatening the men; he seemed to be bragging. Weathers stated that she did not report the conversation to police. When asked why she did not report the conversation, Weathers responded, "Why would I?"

The petitioner's trial counsel did not testify at the hearing.

After the conclusion of the hearing, the trial court entered an order denying both the petition for post-conviction relief and the petition for a writ of error coram nobis. The court found that "[t]he Petitioner failed to show that the testimony of the witnesses he produced at the hearing would have had evidence that may have resulted in a different verdict had it been presented at trial." The court noted that the evidence against the petitioner at trial was "overwhelming." The court stated, "The testimony that someone else states they committed the crime was questionable on admissibility, and not proof that the petitioner did not commit the crime." Further, the court found that the witnesses were available to the petitioner at the time of trial because they knew the petitioner and knew he was charged with murder. "Petitioner's trial attorney was not ineffective for not presenting witnesses unknown to them. . . . The petitioner was not without fault in failing to present this evidence at the proper time."

In response to the petitioner's claim that counsel should have filed a motion to suppress his statement, the trial court found that the petitioner was a minor when his statements were taken but that the petitioner was always accompanied by a parent when he spoke with police. The petitioner never confessed to the crime. The court stated that introduction of the petitioner's statements "presented the contentions of the petitioner without the necessity of the petitioner taking the stand

---

[1] Pamela Tipton was due to have a baby on the day of the hearing, and she did not testify at the hearing.

[2] There is no evidence in the record that "Smoke G" is Lamont Fayne.

-4-

at trial." Thus, the court found that counsel was not ineffective in failing to move to suppress the statements.

The trial court determined that the petitioner's claim that counsel was ineffective in failing to show that the petitioner, due to his mental deficiency, could not be guilty of first degree murder was without merit. The trial court noted that on direct appeal, this court "considered the issue of premeditation, and pointed out that the jury may infer premeditation from the manner and circumstances of the killing." The trial court concluded that the petitioner had failed to show that counsel was ineffective by not presenting evidence of "mental status," or that the result would have been different. The court also determined that the petitioner's mental status was not newly discovered evidence.

Turning to the petitioner's complaints about DNA testing, the court noted that the petitioner was seeking additional testing on the murder weapon which was an exhibit at the petitioner's trial and had been available for testing since that time. The court recalled that experts testified at trial that the gun was the murder weapon, the victim's blood was found in the barrel of the gun, and the slugs from the victim's head matched the gun. The weapon was recovered from the petitioner's closet. The court determined that this also was not newly discovered evidence.

In sum, the trial court found that the petitioner did not prove by clear and convincing evidence that his trial counsel was ineffective. The petitioner further did not prove that he had newly discovered evidence in his possession that would entitle him to a writ of error coram nobis. On appeal, the appellant challenges the rulings of the trial court.

## II. Analysis

Initially, we note that the petitioner's briefs do not clearly set forth the issues, and in many instances fail to support the issues by argument, and he frequently fails to cite authority. See Tenn. Ct. Crim. App. R. 10(b); see also Tenn. R. App. P. 27(a)(7). As a result, we have had difficulty deciphering his complaints. The petitioner appears to be raising three issues: (1) the denial of his petition for a writ of error coram nobis due to newly discovered evidence, (2) the ineffective assistance of counsel, and (3) the right to test certain evidence under the Post-Conviction DNA Analysis Act. We will address each of these concerns in turn.

### A. Writ of Error Coram Nobis

First, we will address the petitioner's argument that he is entitled to a writ of error coram nobis. Tennessee Code Annotated section 40-26-105 (2003) provides:

> There is hereby made available to convicted defendants in criminal cases a proceeding in the nature of a writ of error coram nobis, to be governed by the same rules and procedure applicable to the writ of error coram nobis in civil cases, except insofar as

inconsistent herewith . . . . Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial.

It is well-established that the writ of error coram nobis "is an *extraordinary* procedural remedy . . . [that] fills only a slight gap into which few cases fall." State v. Mixon, 983 S.W.2d 661, 672 (Tenn. 1999). Generally, a decision whether to grant a writ of error coram nobis rests within the sound discretion of the trial court. State v. Hart, 911 S.W.2d 371, 375 (Tenn. Crim. App. 1995).

We note that a petition for a writ of error coram nobis must be filed within one year of the judgment becoming final in the trial court. Tenn. Code Ann. § 27-7-103 (2000). "A judgment becomes final in the trial court thirty days after its entry if no post-trial motions are filed. If a post-trial motion is timely filed, the judgment becomes final upon entry of an order disposing of the post-trial motion." Mixon, 983 S.W.2d at 670. The petitioner's petition for a writ of error coram nobis was filed on July 20, 2004, well outside the statute of limitations. The petitioner concedes that the petition was untimely, but he maintains that the statute of limitations should be tolled because of due process concerns. We conclude that tolling is unnecessary, but we will briefly address the merits of the petitioner's claims. See Workman v. State, 41 S.W.3d 100, 103 (Tenn. 2001).

In the instant case, the appellant argues in his brief that the trial court should have granted his writ of error coram nobis. The petitioner provides no support for his argument, simply stating, "The newly discovered evidence that the [petitioner] contends that would have affected the outcome of the trial is set forth in his original petition for Writ of Error Coram Nobis." The petitioner then repeats the bases set forth in the petition, namely that the entire sample of blood from the murder weapon was consumed during TBI testing and that he was unable to conduct independent testing. Additionally, the petitioner asserts that the TBI's testing of the gun was flawed because the report from the TBI regarding the analysis of the murder weapon reflected the wrong laboratory exhibit number. Further, the petitioner asserts that three witnesses who heard another person confess to killing the victim were not called to testify at trial. In sum, the petitioner stated, "Much evidence in this case as it relates to new witnesses, the mental deficiency of the petitioner, and the suppression of exculpatory evidence, the lack of crucial test results and the undue punishment imposed on the petitioner, was not presented and is not the petitioner's fault."

As the trial court found, there is no evidence in the record to indicate that the petitioner was unaware that the blood evidence found on the gun was completely consumed during the TBI testing. In fact, the evidence is quite to the contrary. Moreover, the record reflects that the petitioner's mental deficiency, the lack of independent testing on physical evidence, and the events surrounding his statements to police were known to the petitioner prior to trial. As this court has previously stated, "Coram nobis relief is available only for 'matters that were not or could not have been litigated on the trial of the case' and for 'newly discovered evidence' provided 'the defendant was

without fault in failing to present certain evidence at the proper time.'" Workman, 41 S.W.3d at 19 (quoting Tenn. Code Ann. § 40-26-105). We conclude that the evidence presented by the petitioner is not "newly discovered" and cannot be the basis of a writ of error coram nobis.

Further, the petitioner's counsel did not testify at the hearing, and there is no evidence in the record regarding whether Tipton's and Weathers' testimony were known to the petitioner prior to trial. Moreover, the petitioner made no mention of these witnesses during his testimony, and the record does not contain any proof as to when the petitioner became aware of the information. Notably, the witnesses were either relatives or friends of the petitioner. Regardless, the trial court found that the witnesses' testimony would have had no impact upon the jury's verdict due to the overwhelming evidence against the petitioner. We can find no evidence to refute this determination. Therefore, the trial court did not abuse its discretion in denying the petition for a writ of error coram nobis.

## B. Ineffective Assistance of Counsel

Next, the petitioner argues that his trial counsel was ineffective. To be successful in his claim for post-conviction relief, the petitioner must prove all factual allegations contained in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2003). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.2 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the trial court as the trier of fact. Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, we afford the trial court's findings of fact the weight of a jury verdict, with such findings being conclusive on appeal absent a showing that the evidence in the record preponderates against those findings. Id. at 578.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. Moreover,

> [b]ecause a petitioner must establish both prongs of the test, a failure
> to prove either deficiency or prejudice provides a sufficient basis to
> deny relief on the ineffective assistance claim. Indeed, a court need

not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697, 104 S. Ct. at 2069).

First, we note that on appeal, the petitioner raises the following allegations of ineffective assistance:

In this case [counsel's] errors will include[:] the failure to insist upon DNA testing of samples from the vagina of [the victim] and matching it with the semen from the petitioner. Failure to request the testing of petitioner's clothing, failure to request that DNA tests performed on the petitioner's hands be submitted and matched with DNA from the trigger of the gun alleged to have killed [the victim]; failure to submit to the Court the conclusions of the investigation, which proved that nothing at the crime scene linked the petitioner to the crime; and most importantly failure to inform the Court that the petitioner had not pleaded guilty contrary to a jury instruction are relevant violations of due process. This catalogue of errors, albeit inadvertent, amount to inefficient assistance of counsel . . . since it resulted in enormous prejudice to the petitioner.

None of the aforementioned grounds for ineffective assistance of counsel were argued before the trial court, and no proof was presented at the hearing to demonstrate that the petitioner suffered any prejudice as a result of these alleged errors. We will not address claims raised for the first time on appeal. See State v. Alvarado, 961 S.W.2d 136, 153 (Tenn. Crim. App. 1996).

The petitioner also contends that counsel was ineffective for failing to have the blood evidence from the gun independently tested. However, the petitioner admits that the sample was completely used during TBI testing. We cannot fault counsel for failing to conduct a test on evidence that no longer existed. Regardless, the petitioner has not shown that he was prejudiced by counsel's inaction or that testing of the weapon would have produced a different outcome.

The petitioner also complains regarding counsel's failure to move to suppress his statements to police. The trial court noted that the petitioner's trial counsel "did not object to the statement, which presented the contentions of the petitioner without the necessity of the petitioner taking the stand at trial." As the petitioner's statements contain no incriminating information, and instead present a complete denial of any involvement in the crime, we fail to see what prejudice resulted from the statements being presented at trial.

The petitioner claims that trial counsel erred in failing to object to the trial court instructing the jury on admissions by the petitioner. The petitioner argues that his statements were not

admissions, and, therefore, the instruction was an impermissible commentary on the evidence. We disagree.[3] We further fail to see any prejudice resulting from this alleged error as well.

The petitioner maintains that counsel should have objected when the State asserted at trial that the bullets recovered from the victim matched the murder weapon. The petitioner contends that "[t]he exhibit numbers introduced at trial indicated that that [m]urder weapon had an assigned exhibit number but the conclusion was that the bullet fragments were fired through the barrel of a different exhibit number." However, as the State notes, the State's expert testified at trial and stated definitively that the bullet fragments recovered from the victim came from "that .22 handgun." There is no indication in the record that this mistake prejudiced the petitioner in any regard.

The petitioner further maintains that trial counsel erred in failing to present evidence of petitioner's mental deficiency before the jury. The petitioner contends that trial counsel should have presented proof regarding his mental deficiency to dispute the mens rea of the charged offense or to show that he might be guilty of a lesser offense. At the post-conviction hearing, the petitioner's proof consisted of his testimony that he had an IQ of 82 and that he attended special education classes. There is no proof regarding how the petitioner's low IQ impaired his ability to understand his rights or the interview conducted by police. Thus, the petitioner has not proven prejudice in this regard.

As his last claim of ineffective assistance, the petitioner complains that counsel failed to present the testimony of Kathy Tipton, Pamela Tipton, and Crystal Shanta Weathers. The trial court found that the evidence against the petitioner at trial was overwhelming. The court said that the testimony that another person claimed to have committed the crime was not proof that the petitioner did not commit the crime. Accordingly, the trial court determined that the witnesses' testimony at trial would have had no impact upon the jury's verdict. The trial court found that the petitioner, again, failed to prove prejudice. We agree. The petitioner has failed to prove that he received ineffective assistance of counsel.

### C. Post-Conviction DNA Analysis Act

Finally, we note that based upon the petitioner's pleadings and his briefs, there is some indication that the petitioner may be arguing for the right to test certain evidence under the Post-Conviction DNA Analysis Act. Prior to ordering DNA analysis of biological evidence, the post-conviction court must find the presence of all of the following criteria:

> (1) A reasonable probability exists that the petitioner would not have been prosecuted or convicted if exculpatory results had been obtained through DNA analysis;

---

[3] We have reviewed the trial court's instructions prior to ruling on this issue.

(2) The evidence is still in existence and in such a condition that DNA analysis may be conducted;

(3) The evidence was never previously subjected to DNA analysis or was not subjected to the analysis that is now requested which could resolve an issue not resolved by previous analysis; and

(4) The application for analysis is made for the purpose of demonstrating innocence and not to unreasonably delay the execution of sentence or administration of justice.

Tenn. Code Ann. § 40-30-304 (2003). "The failure to meet any of the qualifying criteria is, of course, fatal to the action." William D. Buford v. State, No. M2002-02180-CCA-R3-PC, 2003 WL 1937110, at *6 (Tenn. Crim. App. at Nashville, Apr. 24, 2003).

In the instant case, the petitioner appears to petition for the testing of the blood evidence from the murder weapon as well as physical evidence from "the clothing, the car, pubic hair, fetus, and semen of the deceased." We note that the petitioner admits that the sample from the gun was submitted to the TBI laboratory for testing, and, during testing, the sample was completely consumed. Therefore, the petitioner has failed to meet two criteria for the testing of the blood from the gun. See Tenn. Code Ann. § 40-30-304(2) and (3). Further, the petitioner has failed to show that the remaining samples still exist and had not been previously tested. Id.

### III.  Conclusion

Finding no error, we affirm the judgments of the trial court.

NORMA McGEE OGLE, JUDGE